UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>18-20953-CR-COOKE</u>

**UNITED STATES OF AMERICA**

**vs.**

**TERRANCE REYNOLDS,**

       **Defendant.**

_____

## NOTICE OF INTENT TO RELY ON FRE 404(b)(2)/ INEXTRICABLY INTERTWINED EVIDENCE

At least four anticipated government trial witnesses have testified under oath about the defendant's propensity to use physical violence to discipline or punish inmates at the South Florida Reception Center, with one of the four stating he has personally witnessed this occur on many occasions. During the course of the charged conduct, each of these witnesses either acted, or failed to act, because of this knowledge, making the admission of such evidence necessary to allow the government to offer a coherent and complete account of the evidence supporting the charges. Because intrinsic evidence such as this is inextricably intertwined with the charged offenses, FRE 404(b) is not implicated. However, in an abundance of caution, the United States is providing notice of its intent to introduce this evidence pursuant to Rule 404(b)(2), as it is also probative of the defendant's intent, knowledge, absence of mistake, plan, and identity. Alternatively, should this Court ultimately determine the admission of this evidence is not warranted, this pleading serves to inform the Court of the existence of this pervasive issue, so that ground rules can be established for both parties prior to trial.

The grand jury transcripts containing this evidence were provided in discovery to the defendant on March 22, 2019. Undersigned counsel has conferred with defense counsel regarding this notice, including at our May 23, 2019 pretrial meeting, in a good faith effort to resolve by agreement the subject matter herein as required by Local Rule 88.9. The defendant does not agree that evidence of his past assaults on inmates, or his propensity for such violence, should be admissible. The Government is providing this FRE 404(b) notice regardless of how it intends to use this evidence, whether during its case-in-chief, for impeachment, or rebuttal. This submission is intended to provide the defendant with the general nature of the evidence of the extrinsic acts. *See United States v. Carrasco*, 381 F.3d 1237 (11th Cir. 2004).

## I. Facts

### A. Relevant Facts to the Crimes Charged

The defendant worked as a correctional officer at the South Florida Reception Center ("SFRC"), a prison facility operated by the Florida Department of Corrections. He was frequently assigned to work the Security 9 position with Sgt. Brendan Butler. Officers assigned to Security 9 provided security to the prison yard and responded elsewhere as needed.

On March 27, 2017, the defendant and Sgt. Butler entered the Bravo Dorm at SFRC, which housed youthful offender inmates. Earlier that morning, Alicia Owens-Wallace, one of the officers working the Bravo Dorm, had informed the defendant that she had been having difficulties with some of the youthful offenders, as they had been disrespectful to her. The defendant and Sgt. Butler directed three of the youthful offender inmates outside, and then instructed them to go into a mop closet, where there were no surveillance cameras. Inside the mop closet, the defendant and Sgt. Butler beat one of the inmates, identified as Y.O. 1 in the Indictment. During that assault, which was witnessed by the two other youthful offender inmates, the defendant struck Y.O. 1

2

repeatedly with a broomstick.

The following day, after learning that one of the youthful offenders who had witnessed the beating of Y.O. 1, identified as Y.O. 3 in the Indictment, had been talking about the beating, and had again disrespected a female officer, the defendant and Sgt. Butler entered the Echo Dorm, where Y.O. 3 had been transferred. The defendant and Sgt. Butler ordered Y.O. 3 into a small room with no surveillance cameras, and beat him by punching him and kicking him while he lay on the floor.

On May 18, 2018, in *United States v. Butler*, Case No. 18-20298-CR-Cooke, Sgt. Butler pleaded guilty to an Information charging him with one count of conspiring to deprive the three youthful offender inmates of their constitutional rights, in violation of 18 U.S.C. § 241. This Court sentenced him to twenty-four months' imprisonment, which he began serving in April 2019.

On December 13, 2018, a federal grand jury indicted the defendant in the instant case. The five-count Indictment charged the defendant with one count of conspiring to deprive the three youthful offender inmates of their constitutional rights, in violation of 18 U.S.C. § 241, two counts of deprivation of rights, in violation of 18 U.S.C. § 242, for assaulting Y.O. 1 and Y.O. 3, respectively; and two counts of making false statements to the FBI, in violation of 18 USC § 1001.

### B. Facts Relevant to the 404(b)/Inextricably Intertwined Evidence

- Correctional officer Alicia Owens-Wallace testified that she was surprised when the defendant and Sgt. Brendan Butler showed up in the Bravo Dorm on March 27, 2017, because she had not asked either officer to come to the Bravo Dorm. She testified that the reason she had not asked either the defendant or Sgt. Butler to come and assist her with the youthful offender inmates in the Bravo Dorm was because "they [the officers] had a – a reputation of being kind of rough." GJ Tr. 45:16-24. She also stated that Reynolds was "a little hothead" who "had the potential of probably getting into altercations with inmates." GJ Tr. 109:5-19.

    Specifically, she stated that she did not want them in the Bravo Dorm because she did not want "anyone to come in the dorm and do anything harmful to the inmates." Despite having the benefit of this knowledge, Owens-Wallace did not report the use of force as required even though she went outside and saw Y.O. 1 in the mop closet being physically restrained by Butler and Reynolds with a broomstick.

- Officer Judson Leopold testified that he was frequently assigned to work with both the defendant and Sgt. Butler in a position known as "Security 9," which provided security to the prison yard and acted as a rover, to go where additional assistance was needed. During the time that Officer Leopold worked with Sgt. Butler, prior to March 27 and 28, 2017, Leopold testified that he witnessed both the defendant and Sgt. Butler assault inmates, GJ Tr. 14:6-15:17, and could not count the number of times he had seen this. GJ Tr. 26:6-15:17. When he saw Butler and Reynolds being called to go somewhere, Leopold said "I'm going to the other direction." GJ Tr. 26: 18-22. Leopold also testified that Butler and Reynolds spoke with him and others on March 27, 2017, shortly after the mop closet assault, bragging about what had occurred. Despite this conversation and the benefit of his knowledge regarding Reynolds' (and Butler's) propensity for assaulting inmates, Leopold did not report the use of force incident as required.

- Sgt. Tanya McLeod, the other officer working with Alicia Owens-Wallace in the Bravo Dorm, testified that she knew the defendant because they worked together at SFRC, and was aware that he "had a reputation for using force" at the prison. GJ Tr. 14:9-14. Specifically, Sgt. McLeod stated that the defendant had a "reputation of being an enforcer" and "was called when situations had gotten out of control. Then accordingly, inmates were going to be disciplined physically." GJ Tr. 14:21-15:1. On the morning of March 27, 2017, just before the assault charged in Count Two of the Indictment, Sgt. McLeod testified that Sgt. Butler and the defendant came into the Bravo Dorm. When she saw the two men, she became "concerned" because "when security nine alpha is called, especially with Reynolds, you know that the situation is going to get out of control." GJ Tr. 15:2-10. Despite the benefit of this knowledge, Sgt. McLeod did not report the use of force as required.

- During both of the charged assaults, Sgt. Butler testified that each victim asked for

4

a one-on-one.  Sgt. Butler explained that throughout his time as a correctional officer at the South Florida Reception Center, he and other officers routinely participated in "one-one-ones."  This meant officers handled conflicts with inmates by fighting them one-on-one, rather than following Florida Department of Corrections procedure for disciplining inmates, including by writing up disciplinary reports and transferring the inmate to the confinement dorm.  GJ Tr. 31:16-32:13; 56:22-64:14.  Butler testified inmates would not cause problems with Reynolds because "no one messes with him" GJ Tr. 70: 5-25.  He was not asked whether he had seen Reynolds assault inmates prior to the two charged instances, but follow up questions at trial would likely confirm Leopold's experience in this regard.

## II.  Law and Argument
### A.  The Noticed Evidence Is Admissible as Intrinsic Evidence

Despite the Government's notice under FRE 404(b), the above-described evidence is inextricably intertwined to the charged offenses.  Such evidence "[pertains] to the chain of events explaining the context, motive and set-up of the crime."  *United States v. Williford*, 764 F.2d. 1493, 1499 (11th Cir. 1985).  This evidence is admissible because it is "linked in time and circumstances with the charged crime, . . . forms an integral and natural part of an account of the crime, [and also] is necessary to complete the story of the crime for the jury."  *Id.*; *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

Here, Sgt. McLeod and Officer Owens-Wallace's knowledge of the defendant's propensity to use physical force on inmates is inextricably intertwined with their accounts, as it explains their reactions to the defendant entering the Bravo Dorm and their subsequent actions.  For example, Officer Owens-Wallace's understanding of this propensity explains why she did not ask the defendant to assist her in the Bravo Dorm, but only asked to borrow his handcuffs.  It also explains why Officer Owens-Wallace waited just over a minute to walk outside of the Bravo Dorm after

5

Butler and Reynolds left with the three victims believing, despite that short amount of time, the situation "felt a little eerie." GJ Tr. 56:20-24. Likewise, it explains why Sgt. McLeod was nervously pacing inside the Bravo Dorm while the defendant and Sgt. Butler had the inmates outside in the mop closet. It took her almost four minutes to go outside after Owens-Wallace had despite the fact that Owens-Wallace saw what was happening and kept calling for McLeod. GJ Tr. 68:2-22. McLeod knew that "when security nine alpha is called, especially with Reynolds, you know that the situation is going to get out of control." GJ Tr. 15:2-10.

Butler's testimony about Reynold's status as someone who prisoners would not mess with is likewise important. Based on Leopold's testimony, follow up questions would likely reveal that Butler was comfortable initiating physical violence in the mop closet because he had seen and was keenly aware of Reynolds's propensity to physically assault inmates. This was not, by any means, their first joint assault. His testimony in this regard is intrinsic and will be vital to explaining both the context of the assaults, and the reason Sgt. Butler knew and understood that the defendant would be a willing co-conspirator in beating the two victims.

### B. The Uncharged Conduct Is Admissible Pursuant to Fed. R. Evid. 404(b)

Under Federal Rule of Evidence 404(b), evidence of a "crime, wrong or other act" may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Eleventh Circuit has consistently held that Rule 404(b) is a "rule of inclusion" that presumes evidence offered for a permissible purpose is admissible. *See United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) ("Rule 404(b) is a rule of inclusion, and . . . accordingly, '404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case.'"); *accord United States v. Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006); *United States v. Perez-Tosta*, 36 F.3d 1552, 1562

(11th Cir. 1994); *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989).  A district court's decision to admit evidence offered pursuant to Rule 404(b) "will not be reversed absent a clear abuse of discretion."  *United States v. Prosperi*, 201 F.3d 1335, 1348 (11th Cir. 2000).

In order to be admissible under Rule 404(b), "extrinsic act proof must simply be relevant," *United States v. Cross*, 928 F.2d 1030, 1047 (11th Cir. 1991), and offered for a purpose other than "solely to prove character."  *Huddleston v. United States*, 485 U.S. 681, 687 (1988).  Here, the United States offers the prior act evidence to establish the defendant's intent, knowledge, absence of mistake, plan, and identity.  The Eleventh Circuit has held that evidence of past crimes can be highly probative of a defendant's intent to commit similar acts where the uncharged and charged offenses require the same type of intent.  *United States v. Hewes*, 729 F.2d 1302, 1314 (11th Cir. 1984); *see also United States v. Jones*, 913 F.2d 1552, 1566 (11th Cir. 1990); *United States v. Mitchell*, 666 F.2d 1385, 1389 (11th Cir. 1982).

Here, the defendant's previous assaults are probative of his intent to deprive the victims of their right to be free from cruel and unusual punishment, in violation of 18 U.S.C. § 242, as charged in Counts Two and Three.  To prove that the defendant violated Section 242, the United States must show that the defendant acted willfully in depriving the victims of their constitutional rights. *United States v. House*, 684 F.3d 1173, 1198 (11th Cir. 2012).  As the Supreme Court has noted, evidence of prior acts is particularly probative of intent because jurors cannot directly ascertain a defendant's state-of-mind.  *Huddleston*, 485 U.S. at 685 ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially where that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").  Additionally, in the context of 18 U.S.C. § 242, the Eleventh Circuit has specifically recognized "that a series of actions 'that support an innocent explanation' when

7

'viewed in a vacuum,' may in combination provide sufficient evidence for a reasonable juror to infer a defendant's intent." *House*, 684 F.3d at 1200 (quoting *United States v. Harris*, 20 F.3d 445, 453 (11th Cir. 1994)).  Here, evidence that the defendant committed prior assaults provides evidence that the defendant willfully assaulted the victims in the charged counts.

Additionally, evidence that the defendant committed prior, similar assaults with Sgt. Butler while they both were assigned to the Security 9 position also demonstrates the defendant's participation in a common plan.  *See* Fed. R. Evid. 404(b)(2); *United States v. LeCroy*, 441 F.3d 914, 926 (11th Cir. 2006) (evidence of prior burglaries and plans to commit a carjacking admissible to prove modus operandi); *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002) (prior act evidence properly admitted to show state of mind and modus operandi).  This is particularly relevant here, as Count One charges that the defendant engaged in a conspiracy with Sgt. Butler to deprive the victims of the constitutional rights.  Evidence that the defendant participated in prior assaults with Sgt. Butler demonstrates that they shared an agreement and understanding – a common plan to assault inmates whom they perceived as acting disrespectfully – in order to punish them and teach them a lesson.  This evidence thus supports an essential element of Count One, which charges a violation of 18 U.S.C. § 241, the civil rights conspiracy charge.  Further, it will serve the practical purpose of explaining to the jury why the defendant shared such an understanding with Sgt. Butler without engaging in extended conversations immediately prior to the charged assaults.  The defendant's understanding was built on a foundation of prior instances where the two officers had been called in to act as enforcers when inmates became unruly or disrespectful.

### III. CONCLUSION

The Government hereby gives notice of intent to introduce evidence relating to the defendant's prior assaults of inmates at SFRC as intrinsic evidence and, alternatively, pursuant to Rule 404(b), of its intent to introduce evidence of the prior assaults to prove intent, knowledge, lack of mistake, plan, and identity. For all the reasons stated above, this evidence is properly admissible.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: */s/ Robert K. Senior*
Robert K. Senior
Assistant United States Attorney
Florida Bar No. 779407
99 Northeast 4th Street, Ste. 800
Miami, Florida 33132-2111
Tel: (305) 961-9291
Fax: (305) 530-7087
Email: Robert.Senior@usdoj.gov

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 3, 2019, a true and correct copy of the foregoing was served upon all parties via the ECM/ECF system.

*s/ Robert K. Senior*
Robert K. Senior
Assistant United States Attorney